UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CARLOS ALBERT PACHECO MARQUES,      :
    Plaintiff,                                       :
                                                           :
    v.                                                    :    C.A. No. 15-468M
                                                           :
CAROLYN W. COLVIN, ACTING                      :
COMMISSIONER OF SOCIAL SECURITY,   :
    Defendant.                                      :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    Plaintiff Carlos Albert Pacheco Marques contends that he became fully disabled in September 2012, when he was involved in a motor vehicle accident, even though he stopped working over a year before because of a dispute with his supervisor. His disability application, based on spine/leg problems and depression/anxiety, complicated by substance abuse, was denied by an Administrative Law Judge ("ALJ"). His claim is now before the Court on Plaintiff's motion for reversal of the decision of the Commissioner of Social Security (the "Commissioner"), denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act"). Plaintiff contends that the ALJ erred in the weight afforded to the opinions of his family medicine physician, Dr. Samantha Greenberg, and in his evaluation of Plaintiff's credibility. Defendant Carolyn W. Colvin ("Defendant") has filed a motion for an order affirming the Commissioner's decision.

    This matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, I find that there is no error and that the ALJ's findings are well supported by substantial evidence.

Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be GRANTED.

I.      **Background**

Plaintiff left school in eleventh grade; for many years, he worked at various laboring jobs, but also abused alcohol, cocaine, marijuana, opioids and benzodiazepines. Tr. 243, 246. His criminal history includes four arrests for driving while intoxicated and a conviction for assaulting his mother's sixty-one-year-old boyfriend, for which he served a year in prison. Tr. 244, 269. During the period of alleged disability, he lived at times with his girlfriend and at other times with his mother and brother; he also socializes with friends. Tr. 30; 245. He lost his last job at a printing company in April 2011 because of a dispute with his supervisor. Tr. 186.

The record reflects Plaintiff's persistent complaints of extreme back pain radiating into his legs. Although there is no medical record to confirm it, he contends that the September 4, 2012, motor vehicle accident significantly exacerbated spinal issues to the point that they became disabling. See Tr. 235-40; 307 (Memorial Hospital CT showed some degeneration but no acute findings). The follow-up MRI performed in October 2012 showed one moderate disc bulge causing severe foraminal narrowing and several mild bulges. Tr. 240. Plaintiff was referred to Dr. Cielo at the Neurosurgery Foundation; on May 7, 2013, Dr. Cielo confirmed chronic lower back pain with radiculopathy secondary to lumbar spondylitic disease, and discussed treatment options, which included "surgical management." Tr. 250. Dr. Cielo's notes reflect that Plaintiff told him that he was not using any "recreational drugs," even though the record reflects that he was actively using marijuana and non-prescribed benzodiazepine and opioids during the same time period. Compare Tr. 250, with Tr. 244, 263. Apart from this appointment with Dr. Cielo,

all of the treatment for Plaintiff's spine took place at the Memorial Hospital Family Care Center or the Memorial Hospital Pain Management clinic.

At the Family Care Center, Plaintiff's initial primary family practitioner was Dr. Thorpe, who saw him from October 2012 until May 2013. Her records reflect that Plaintiff consistently described back pain as "10/10," that he declined surgery, and that the appointments were a constant struggle over his desire for prescriptions for strong muscle relaxants and pain medication. E.g., Tr. 253 (Plaintiff asks, "can't you give me a speed pill?"; told not appropriate); Tr. 274 (Plaintiff told "we will not be prescribing chronic pain meds and no muscle relaxants"); Tr. 281 (asking for more Soma; admitted taking marijuana and unprescribed Percocet, clonazepam and possibly methadone). At one appointment, Dr. Thorpe noted, "not obviously under the influence but there was concern as he kept jumping from one topic to the other and had a hard time following." Tr. 282. Dr. Thorpe's records establish that, despite his complaints of pain at the level of "10/10," Plaintiff consistently reported that he was taking care of his elderly mother; he also said that he was "doing things (car work)" for friends, for which he was paid with drugs, such as "vicodins, percocets, speed in the am's, clonidine, clonazepam." Tr. 253, 259, 274; see also Tr. 313 (Plaintiff cared for his girlfriend's children). At her first two appointments, Dr. Thorpe's physical examinations of his back resulted in her observation of tenderness, positive leg raise and decreased sensation on the left, but not decreased range of motion. Tr. 304. After that, her notes on physical examination typically yielded no findings, except occasional muscle tension. E.g., Tr. 257 ("neg straight leg raise . . . normal ROM"); see Tr. 297 ("hypertrophic paraspinal lumbar musculature"). Dr. Thorpe referred him to the pain management clinic at Memorial Hospital, which gave him three spinal injections, but only Tylenol, which frustrated him. Tr. 263, 315-17.

3

Although the focus of her treatment was back pain, Dr. Thorpe also addressed Plaintiff's complaints of depression. She prescribed medication and referred him to psychiatrist Dr. Ong for an evaluation in January 2013; Dr. Ong diagnosed depression and post-traumatic stress disorder, as well as polysubstance dependence in sustained partial remission. He recommended medication and therapy as soon as Plaintiff was stabilized. Tr. 269-70. At her last appointment with Plaintiff in May 2013, Dr. Thorpe reiterated that she was encouraging counseling, noted Plaintiff's report of pain of "10/10," but refused to prescribe "speed." After her first appointment at which she noted "flat affect, depressed mood, decreased desire to do anything," Tr. 300, Dr. Thorpe's mental status observations reflect no abnormal findings, except once she noted that he was "at times laughing inappropriately." Tr. 254; see Tr. 257 ("Mood and affect appropriate"); Tr. 264 ("no abnormalities"); Tr. 267 ("[n]o abnormalities"); Tr. 272 ("[n]o abnormalities"); Tr. 282 (questioning whether he is "under the influence"); Tr. 297 ("[n]o abnormalities").

After Dr. Thorpe left the practice, Plaintiff appears to have been switched to another family medicine doctor, Dr. Samantha Greenberg,[1] although he did not begin to see her regularly until December 2013. In November 2013, Dr. Greenberg wrote a letter expressing the opinion of the practice – not her own opinion as she had seen him only twice as of that date – that Plaintiff's functional capacity was adversely impacted by back pain particularly because his prior work involved manual labor. Tr. 340. The letter does not opine that he cannot work at all. After she

---

[1] Plaintiff's counsel mistakenly characterizes Dr. Greenberg as a psychiatrist. She is not. Rather, she is a member of the family medicine team at the Memorial Hospital Family Care Center who served as Plaintiff's primary care physician. See Tr. 22 ("primary care physician, Dr. Greenberg"). Dr. Greenberg's status as a family medicine doctor is confirmed by the public information about her that is available on the internet. http://health.ri.gov/find/licensees/results.php?id=96841&license=MD15340 ("Allopathic Physician (MD);" no specialty listed); https://www.healthgrades.com/physician/dr-samantha-greenberg-y9sbxsz ("Family Medicine"); http://doctor.webmd.com/doctor/samantha-greenberg-md-4fc19f46-0cd7-49d3-8abb-992b6caa07ac-overview ("Family Medicine"); https://www.sharecare.com/doctor/dr-samantha-n-greenberg ("Family Medicine") (visited on Dec. 6, 2016).

began seeing Plaintiff regularly, she continued to prescribe medication to treat depression and to consider his requests for stronger pain medication for his back.  Her physical examinations do not reflect many serious abnormal findings.  Tr. 328 ("Back.  No pain. . . Slightly down affect.  Otherwise appropriate"); Tr. 331 ("Pain to palp over L trap . . . Upset, tearful . . . Full ROM, pain w/ ROM"); Tr. 352 (no observations of spine; "[d]enies SI, slightly decreased affect but appropriate"); Tr. 359 (no observations of spine; "[d]enies SI/HI"); Tr. 367 (no observations of spine; "[c]onstricted affect"); Tr. 372 (no observations of spine; "[a]ffect blunted."); Tr. 377 (pain with palpation and extension, "[p]ain to palp over R SI joint, exquisite . . . [f]lexion limited"); Tr. 382 ("Pain to palp over R SI joint . . . Depressed mood and affect").  Examinations by other physicians in the practice yielded similarly benign results.  See Tr. 338 ("Mild lumbar paraspinous tenderness.  ROM limited in flexion and extension . . . SLR neg. bilaterally"); Tr. 363 ("muscles tight lumbar back and tender . . . affect a tiny bit flat, mood a bit down").

After several months, in January 2013, Dr. Greenberg capitulated to Plaintiff's persistent requests for narcotic pain medication but only on condition that he get counseling treatment for depression and that he follow-up on the suggestion that surgery might mitigate his back pain.  Tr. 373.  Plaintiff was very "upset by this conversation . . . [w]alked out of encounter."  Id.  Following this appointment, Plaintiff had what appears to be an intake appointment with a psychologist and one counseling appointment with another psychologist, both in April 2014, just before the ALJ hearing; an appointment with Dr. Cielo, the neurosurgeon, had been scheduled for shortly after the ALJ hearing.  Tr. 34, 374, 379.  At the counseling appointment with the psychologist, Plaintiff said that he believed the depression was caused by chronic back pain and would be alleviated if his primary care doctor would prescribe narcotics.  Tr. 379.

5

Over the period reflected in the record, except for the two appointments with psychologists just before the ALJ hearing that Plaintiff appears to have attended so he would be prescribed narcotics, Plaintiff never accessed therapy.[2] Although Dr. Greenberg noted early in the course of treatment that Plaintiff told her that he had completed counseling at Gateway, Tr. 351, there are no records reflecting that he did.

## II.     Travel of the Case

Plaintiff filed his DIB and SSI applications on October 15, 2012, alleging disability beginning September 4, 2012. Tr. 152-67. They were denied initially and on reconsideration, Tr. 96-99, 102-07. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, a medical expert, psychiatrist Dr. John Ruggiano, and a vocational expert. Tr. 27-47. On June 10, 2014, the ALJ issued a decision finding that Plaintiff was not disabled at any time since his application date, and was therefore not entitled to receive the requested benefits. Tr. 15-26. The Appeals Council denied Plaintiff's request for review, Tr. 1-4, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff has exhausted his administrative remedies, and this case is now ripe for review. 42 U.S.C. §§ 405(g), 1383(c)(3).

## III.    Issues Presented

Plaintiff's motion for reversal rests on two arguments – that the ALJ erred in his evaluation of and the weight accorded the opinions of Plaintiff's treating "psychiatrist" and that the ALJ erred in his evaluation of Plaintiff's credibility.

---

[2] Without citation to the record, Plaintiff's counsel argues that he "was in continuous treatment with a therapist and psychiatrist during the period under adjudication." ECF No. 10 at 13. Counsel's error in characterizing the primary care physician as a psychiatrist explains away the erroneous reference to "psychiatrist." See n.1, *supra*. The reference to "a therapist" is a mystery. Until two weeks before the ALJ hearing, no therapy appointments appear in the record; rather, the record appears to reflect that Plaintiff was not interested in any mental health treatment other than narcotic medication. See Tr. 245 ("claimant is not receiving counseling services and has no history of significant participation with psychotherapy"); Tr. 254 ("encouraged counseling"); Tr. 373 (narcotics will be prescribed only if Plaintiff engages in treatment for depression – "group or solo counseling – and actively engages in "clear plans for surgical intervention.").

6

**IV.      Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical

evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

The Court must reverse the ALJ's decision if the ALJ applied incorrect law or failed to provide the Court with sufficient reasoning to determine that the law was applied properly. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991). Remand is unnecessary when the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)). The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996). To remand under Sentence Four, the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled). In contrast, Sentence Six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). To remand under Sentence Six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139-43 (1st Cir. 1987).

8

## V. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A. Treating Physicians and Other Sources

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(d). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity ("RFC"), see 20 C.F.R. § 404.1545-1546, or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

### B.  Making Credibility Determinations

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986);

Rohrberg, 26 F. Supp. 2d at 309-10. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**VI. Analysis**

Plaintiff's primary argument is focused on the ALJ's treatment of the opinions of treating physician Dr. Greenberg. The argument suffers from an array of flaws.

For starters, Plaintiff wrongly characterizes Dr. Greenberg as a psychiatrist. There is nothing in the record suggesting this is accurate; to the contrary, it appears clear that Dr. Greenberg is a family medicine physician, a generalist with no special expertise in mental health treatment. See Tr. 22 (Dr. Greenberg is a "primary care physician"); n.1, *supra*. Second, as the ALJ correctly found, Dr. Greenberg's opinions are a mixed bag. Her first (Tr. 340), a to-whom-it-may-concern letter written after she had apparently seen him twice, opines only that Plaintiff is limited and cannot perform his prior work, a proposition that aligns with the ALJ's decision. See Tr. 24 ("claimant has been unable to perform his past relevant work"). The second, filled in on a mental impairment form, is the only one that provides a function-by-function assessment; as to physical impairments, it opines only that Plaintiff is limited, which is consistent with her first opinion. Most of the mental impairment ratings noted by Dr. Greenberg are either mild or

11

moderate. Tr. 388-89. The only material "moderately severe" rating is assigned to Plaintiff's ability to "[r]espond to customary work pressures." Tr. 389. However, with no mental health expertise, having made few abnormal mental health observations and having done no other clinical testing or other procedures related to Plaintiff's functional limitations arising from mental health impairments, Dr. Greenberg has signed an opinion with an outlier rating whose basis is impossible to ascertain. And her third opinion simply expresses the conclusory view that Plaintiff is disabled due to depression and chronic back pain without regard to substance abuse – Dr. Greenberg makes no attempt to break this aspect of her opinion down to specific functional limitations, nor does she explain how the opinion that Plaintiff would be disabled without substance abuse meshes with the ongoing struggle reflected in her treating records over whether she would prescribe narcotics. See Tr. 41 (psychiatrist testifying as medical expert opines that, "if he gets narcotic he, he's comfortable and if he doesn't he's uncomfortable.").

There is no error in the ALJ's treatment of the three Greenberg opinions. First, he properly disregarded the aspects of them that are entirely conclusory or that opine vaguely that Plaintiff is limited with no indication what the limitations are and how severely they impede Plaintiff's ability to function. More importantly, in rejecting Dr. Greenberg's moderately severe rating for the ability to respond to work pressures, the ALJ properly considered the many record references establishing that Plaintiff cared for his elderly mother who had Alzheimer's disease,[3] at times cared for his girlfriend's three children and had adequate concentration for reading a

---

[3] Plaintiff points to his statement about caring for his mother made in connection with his disability application, which is cabined by the comment "[n]ow someone else." Tr. 200. He relies on this comment to argue that the ALJ lacked substantial evidence to support the finding that Plaintiff was able to care for his elderly mother. A read of the medical record is sufficient to put the lie to this argument. Plaintiff's statements to health care providers that he – not someone else – cared for his mother are legion. E.g., Tr. 245, 253, 263, 311; see Tr.269 (in evaluation by psychiatrist Dr. Ong, "he describes himself as [his mother's] caretaker with no help from his other siblings.").

newspaper and for performing other tasks.[4] Tr. 20. The ALJ also properly considered the report prepared by Dr. Sol Pittenger, the expert psychologist who conducted a consulting examination of Plaintiff. Tr. 243-47. Dr. Pittenger's testing provides objective evidence that Plaintiff – to use lay terminology – tried to fake the severity of his mental limitations by deliberately flubbing parts of the testing protocol, which Dr. Pittenger was able to detect through other objective observations. See Tr. 246-47 ("performance should be interpreted with caution however given apparent efforts to exaggerate impairment on the mental status exam task"); see also Tr. 40 (psychiatrist who testified as medical expert opined that "there's a big discrepancy between complaining of pain, nine out of 10 and the objective findings"). Finally, the ALJ noted the very limited nature of the mental health treatment Plaintiff accepted or required, including not just no hospitalizations and no counseling, but also almost no contact with any providers with mental health expertise. Indeed, Plaintiff's counsel's mistaken belief that Dr. Greenberg is a psychiatrist seems to be a principal foundation for the ill-conceived argument that Dr. Greenberg's opinion that Plaintiff is fully disabled based on mental limitations should have been relied on by the ALJ.

Instead, to properly reflect Plaintiff's mental limitations in his RFC, the ALJ relied on the carefully crafted opinion of Dr. Gordon, the reviewing psychologist at the reconsideration phase, who examined the entire record except for the last months at the Memorial Hospital Family Care Center. Dr. Gordon specifically concluded that Plaintiff's ability to maintain attention, perform activities within customary tolerances, work at a consistent pace and complete a normal work day are all moderately limited. Tr. 73-74, 76-78, 87-88, 89-91. Overall, he found that Plaintiff's substance abuse, mood disorders and anxiety caused, at most, moderate limitations. Tr. 74, 87.

---

[4] The ALJ did not mention, but the Court notes, the entry in Dr. Thorpe's treating record reflecting Plaintiff's report to her that he did work for friends, including car work, for which he was paid in pills, such as Vicodin, Percocet, speed, clonidine and clonazepam. Tr. 274. This entry corroborates the ALJ's finding that Plaintiff's functional capacity was consistent with the findings of Drs. Gordon, Hanna and Georgy, the SSA reviewing physicians and psychologist.

13

Further, at the reconsideration phase, Dr. Pittenger's finding that Plaintiff lacked credibility based on his "attempts to exaggerate his deficits" was endorsed.

I find that there is no error in the ALJ's elevation of Dr. Gordon's opinion over that of Dr. Greenberg on the particular question of the severity of Plaintiff's mental ability to manage workplace pressures. See Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982) (affirming ALJ's adoption of the findings of a non-testifying, non-examining physician, and permitting those findings to constitute substantial evidence, in the face of a treating physician's conclusory statement of disability). Accordingly, I conclude that the ALJ's opinion determinations are amply supported by substantial evidence.

Plaintiff's other argument – that the ALJ's adverse credibility finding is tainted by error – borders on frivolous. Dr. Pittenger's objective finding that Plaintiff was attempting to exaggerate the severity of his mental health limitations during psychological testing in connection with his disability application is powerful evidence that Plaintiff's descriptions of the limiting effects of his symptoms are unreliable. The ALJ's reliance on the Pittenger report is more than sufficient to render the adverse credibility finding free of error. However, the ALJ did not rest there; among other reasons, he also noted the clash between Plaintiff's claim that he never socializes but spends ten hours a day in bed with his ongoing care for his elderly mother, his statement that he socializes with friends and with his on-again, off-again relationship with his girlfriend and her children. There is no error in the ALJ's adverse credibility finding.

## VII.  Conclusion

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) be GRANTED. Any objection to this report

and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 7, 2016